# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ERIN ELBA,**

                **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:05-cv-612-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on Plaintiff's petition to review the decision of the Commissioner, finding that Plaintiff was no longer entitled to receive disability benefits. For the following reasons, the matter is **remanded** to the Commissioner for further development of the record.

### *PROCEDURAL HISTORY*

Based on an application filed in June 1997, Plaintiff was found disabled and awarded disability benefits, with an onset date of March 23, 1996 (R. 37-42). Subsequently, a continuing disability medical review was initiated, resulting in a determination that Plaintiff's disability ceased effective August 1, 2002. This determination was affirmed upon reconsideration (R. 103-12). Plaintiff requested and received a hearing before an Administrative Law Judge (herein "the ALJ") (R. 275-93). Plaintiff was not represented by an attorney at the hearing. An unfavorable decision was issued on September 24, 2004, finding that Plaintiff no longer met the statutory definition of disability as of

August 2002 (R. 12-21). Specifically, the ALJ determined that there had been improvement in her medical condition since the comparison point (R. 20).

Plaintiff filed a request for review of the hearing decision on November 23, 2004 (R. 11). Plaintiff submitted additional evidence to the Appeals Council, including new medical records (R. 10). On February 25, 2005, the Appeals Council denied Plaintiff's request for review (R. 7-10). Plaintiff timely brought the instant action in this Court, and consented to the jurisdiction of the undersigned United States Magistrate Judge. The matter is now ripe for review.

### *NATURE OF DISABILITY CLAIM*

Plaintiff was found to be under a disability commencing March 23, 1996, due to limitations pursuant to herniated lumbar discs (R. 15).

*Summary of evidence Before the ALJ*

At the time of her injuries, Plaintiff was a 28 year old living in New York, with work experience as a nurse's aide. The medical evidence prior to her award of disability benefits established that plaintiff had limitations resulting from lumbar disc injuries suffered at work.

Medical records showed Plaintiff injured her lower back while working in December 1995 and March 1996 (R. 207, 209, 216-222). When examined in March 1996, Plaintiff had severe restriction of back motion and evidence of lumbar spasm (R. 210, 221-22). An MRI in April 1996 showed degenerative discs at L4-L5 and L5-S1, with herniated discs at L4-L5 and L5-S1, and a herniated disc at L3-L4 interspace with left neural foraminal encroachment (R. 220). Examinations of Plaintiff in April and July 1996 found her active range motion limited by pain and she was diagnosed with lumbosacral sprain/strain, lumbosacral radiculopathy, and herniated disc at L5-S1(R. 213-14).

Persistent back pain with radicular pain into the left lower extremity was reported in October

1996, and Plaintiff's treating chiropractor, Peter J. Saccone, D.C., said she was unable to work (R. 227-233). An MRI of the lumbar spine dated May 2, 1997, revealed herniations from L3-L4 through L5-S1. (R. 223 – 24).

On July 21, 1997, Plaintiff was seen by Charles Lipton, M.D., due to back pain. Examination of the lower extremities revealed her quads were 4/5 on the right and 3/5 on the left. Patella reflexes were 2/4. She could flex to 40 degrees, 10 degrees on the left. She was able to sit for 45 minutes, stand for 1 hour and walk 5 – 6 blocks slowly. She could carry 10 pounds with either upper extremity. (R. 239–40). This was the state of the medical record at the time disability was established by decision of June 26, 1998.

Following the determination of disability, there are no subsequent treatment records from Mr. Saccone; however, in July 2002, he reported he had last seen Plaintiff on June 23, 2000 (R. 55). Mr. Saccone reported that at that time, Plaintiff had intermittent back pain that was mild to moderate under normal conditions. Mr. Saccone said Plaintiff should not lift over 25 pounds and should not bend, but had no limitations on standing, walking, sitting or pushing/pulling (R. 58).

At the request of the Social Security Administration, Plaintiff underwent an orthopedic consultative examination by Dr. David Borenstein on August 6, 2002 (R. 253-56). At that time, Plaintiff reported persistent, sharp, low back pain, rated 7/10 on the pain scale, with pain radiating into her lower extremities (R. 253). Dr. Borenstein noted that Plaintiff was independent in cooking, cleaning, laundry, shopping, money management, socializing with friends, showering, bathing, and dressing. On examination, Plaintiff's gait was normal; she was able to walk on her heels and toes without difficulty and squat partially (R. 254). Dr. Borenstein reported that Plaintiff did not use any assistive devices or need assistance getting on and off the examining table. Plaintiff exhibited lumbar

flexion to 80 degrees and lumbar extension to 30 degrees. She had full lateral flexion bilaterally and full rotary movement. There was no evidence of spinal or para-spinal tenderness, spasm, or scoliosis, but there was bilateral SI joint tenderness and bilateral sciatic notch tenderness. Plaintiff's straight leg raising test was negative bilaterally and she had no trigger points. She had a full range of motion in her hips, knees, and ankles with 5/5 muscle strength. There was no evidence of sensory abnormality and her reflexes were physiologic and equal (R. 254-55). Plaintiff's hand and finger dexterity were intact and she had 5/5 grip strength (R. 255). Dr. Borenstein concluded, "[t]he claimant has no restriction for standing or walking. She has no restriction for squatting or kneeling. She has a moderate restriction for lifting and carrying. She has no restriction for activities requiring fine manipulation or visual acuity." (R. 255). The report does not indicate that the MRI results were reviewed as part of the consultative examination.

On September 17, 2002, an MRI of the lumbar spine indicated that Plaintiff suffered from central disc herniations effacing the ventral aspect of the thecal sac from L3-L4 through L4-L5 and an L5-S1 central disc herniation effacing the epidural fat and just touching the right S1 nerve root. (R. 257).

According to Plaintiff, she had been seeing a New York doctor, Dr. Suganthi Ravindran, "for the past 4 years" (R. 197).[1] The doctor had prescribed Zoloft, Celebrex and Imitrex for her, according to Plaintiff's report (R. 198-200), and yet the record contains only one treatment note from Dr.

---

[1] The form is not dated, but as the continuing disability review was underway in 2002 and the form was no doubt completed pursuant to that review, the Court assumes that the form was filled out in 2002, and refers to a period of time from approximately 1998 onward.

Ravindran, (R. 258-61).[2] On March 13, 2003, Dr. Ravindran evaluated Plaintiff for complaints of low back pain in what is deemed a "follow up" visit (R. 258). The note appears to refer to at least two prior visits, as indicated in the "Problem List" (R. 258).[3] On this examination, the doctor found the range of motion in Plaintiff's lumbar spine was somewhat limited, but she had normal range of motion in her neck and extremities (R. 259). There was some evidence of para-spinal tenderness, but no muscle spasms were recorded. Plaintiff had 5/5 strength and normal sensation; straight leg raising was positive at 30 degrees (R. 259). In a note, Dr. Ravindran referenced Plaintiff's MRI results, and indicated that Plaintiff could not lift, push or pull, and was "totally disabled." (R. 261).

In September 2003, Plaintiff moved from New York to Florida (R. 291).

Plaintiff was seen at the Complete Wellness Medical Center in May 2004 (R. 262-63). A letter signed by Dr. Ralph J. Chambers and chiropractor Thomas F. Yandell, Jr., D.C., dated June 10, 2004, reported that Plaintiff's diagnoses included chronic moderate sciatic neuritis; chronic moderate lumbar I.V. disc degeneration; chronic moderate lumbar paravertebral myofascitis and myofibrositis, and chronic moderate lumbar related parasthesia (R. 262). Plaintiff had reached a plateau and treatment was deemed no longer curative (R. 263). At the hearing held on June 28, 2004, Plaintiff reported that she had seen Dr. Chambers once and had chiropractic treatments from Mr. Yandell 5-6 times (R 290).

Plaintiff appeared and testified at the hearing about her pain and limitations. She appeared without an attorney or representative, even though she earlier stated that she wanted to be represented, but "they wanted a $2,000 retainer, which I could not afford." (R. 277). She noted that she received

---

[2] Additionally, the MRI taken on September 17, 2002 was addressed to Dr. Ravindran (R. 257).

[3] The note also indicates the medications Zoloft and Zomig were prescribed.

worker's compensation benefits (R. 285)[4] and that she did not have prescription drug coverage (R. 284-5), so she took over the counter pain medications. She testified that she used a back brace which she wore all the time except when sleeping (R. 287). She stated that her back goes out "at any time" (R. 283-4), resulting in severe pain and limitations. She also stated that she drives a car, lives in a second floor apartment without an elevator, reads, watches television, cooks, cleans (with help), shops, and does the laundry (R. 279-89).

The ALJ issued a determination on September 24, 2004, finding that Plaintiff had improved from her comparison point and was no longer disabled. Specifically, the ALJ compared the findings of Dr. Lipton (quads were 4/5 on the right and 3/5 on the left. Patella reflexes were 2/4. She could flex to 40 degrees, 10 degrees on the left. She was able to sit for 45 minutes, stand for 1 hour and walk 5 – 6 blocks slowly. She could carry 10 pounds with either upper extremity) with the "sparse evidence of recent treatment," noting that Plaintiff admitted to substantial activities of daily living, an ability to lift 10 pounds, and that her current straight leg raising was negative bilaterally, and lumbar flexion was 80 degrees, with no sensory or reflex abnormalities (R. 18). The ALJ noted that Plaintiff required only conservative treatment and that clinical findings had been rather minimal.

Subsequent to that determination, Plaintiff underwent another MRI, dated October 13, 2004, which revealed disc herniations at L3-L4, L4-L5 and L5-S1 with no significant central canal stenosis and narrowing of the left lateral recess and the neural foramina at L5-S1 (R. 266-7). It was noted that there was end plate degenerative changes at L5-S1. Moreover, Plaintiff was examined by Sandeep Teja, M.D. on November 4, 2004. Plaintiff described her pain as radiating down mainly her left leg

---

[4] Plaintiff was found to be permanently disabled by the worker's compensation board (R. 131).

to the knee and numbness of her foot. The October 13, 2004 MRI was reviewed and compared to a prior study. It was noted that the prior study did not reveal degeneration at L3-L4 as seen in the recent film. In addition, her L5-S1 disc height was preserved three years ago, however, now it had collapsed and there were end plate changes.  Dr. Teja opined that there was progression of disease from three years ago. It was recommended that Plaintiff undergo surgery at L5-S1 with interbody fusion at least over the possible L3-L4 and L4- L5 fusion as well (R. 268-70).

These records were submitted to the Appeals Council along with the Request for Review, but were not considered by the ALJ.

The ALJ determined that Plaintiff had improved and she was found to have the residual functional capacity for light work (R. 20), with no non-exertional limitations (R. 19).  She was found unable to perform her past relevant work, but the ALJ utilized the Medical Vocational Rules and determined that Plaintiff was no longer disabled as of August 1, 2002 (R. 21).

### *THE STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff has asserted that the ALJ erred in determining that Plaintiff's condition had medically improved and, in the alternative, Plaintiff asserts that the Commissioner erred in not obtaining a vocational expert, in not developing the record sufficiently and in failing to properly apply the pain standard. The Court finds merit in Plaintiff's contention that the record is not sufficiently developed.

**Sentence Four and Six**

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090-91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow him to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827 (11th Cir. 1984). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726 (11th Cir. 1983). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1) that there is new, non-cumulative evidence; 2) that the evidence is material – relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, F.3d at 1090-92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. *Jackson*, 99 F.3d at 1095.

**Developing The Record**

The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. *See Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997). Here, Plaintiff clearly wished to be represented at the hearing, and in fact, a prior hearing was adjourned in order to allow Plaintiff ten days to obtain a representative (R. 273). At the latter hearing, when questioned about the lack of a representative, Plaintiff responded only "They wanted a $2,000 retainer, which I could not afford." (R. 277). Nothing in her testimony indicates that Plaintiff was aware that she had other options which were either explored or rejected. *Cf. Cowart v. Schweiker,* 662 F. 2d 731, 734-5 (11th Cir. 1981) (claimant's affirmative response when asked whether she wished to proceed without an attorney did not reflect a true desire to do so when viewed in the context of other testimony that she had unsuccessfully attempted to obtain free public assistance and was unable to afford an attorney). Thus, the Court finds that Plaintiff did not knowingly and voluntarily waive her right to representation. The ALJ therefore had a special duty to "scrupulously and conscientiously probe into, inquire of, and explore" the relevant facts. *Brown v. Shalala,* 43 F. 3d 931, 934 (11th Cir. 1995) *quoting Smith v. Schweiker,* 677 F.2d 826, 829 (11th Cir. 1982). The Court finds that the ALJ failed in this duty, resulting in prejudice to Plaintiff.

As noted by the ALJ, the medical record is sparse and almost completely devoid of any treatment notes with respect to the time period at issue. Of great concern, despite the fact that Plaintiff identified Dr. Ravindran as her treating physician for the relevant time period, the record contains only one treatment note from this physician, and that note was provided by Plaintiff herself (R. 103). As Plaintiff stated that she treated with Dr. Ravindran for a variety of conditions over a four year period, it is likely that additional treating records pertinent to the time period at issue here must

exist, especially in light of the MRI record addressed to Dr. Ravindran and the notations regarding previous visits. The Court finds that these records are essential in order to properly evaluate Plaintiff's condition at the pertinent time.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Even when a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). And it is generally accepted that a treating physician's opinion is entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, the treating physician opined that Plaintiff is totally disabled. The ALJ cannot properly evaluate that opinion without reviewing the physician's findings and the factors establishing the course of treatment, as set forth above. The Court finds that, in view of the importance of this treating physician and Plaintiff's *pro se* status, the ALJ had a duty to develop the record with respect to this

physician in order to properly evaluate Plaintiff's condition.[5] *See Brown v. Shalala,* 44 F.3d at 935-6. In *Brown,* the ALJ failed to contact an unrepresented claimant's physician for updated information, even though the claimant testified that she was examined twice just prior to the hearing. The Eleventh Circuit noted that this presented an "evidentiary gap" which was "undoubtedly prejudicial" to a claim for benefits. *Id*. Similarly here, it appears that no effort was made to obtain what is arguably the most important evidence with respect to Plaintiff's contention of continued disability: the treatment notes and evaluation of the treating physician.[6] Remand is necessary. Upon remand, Dr. Ravindran should be contacted[7] and her notes and records produced for review.

Although not before the ALJ at the time of the determination, the Court also finds that, upon remand, the ALJ should consider the latest MRI results and treatment notes submitted to the Appeals Council.[8]

## *CONCLUSION*

The matter is reversed and remanded, pursuant to sentence four, for additional proceedings consistent with this opinion. The Clerk is directed to enter judgment accordingly, and to close the file.

---

[5] Indeed, as pointed out by Plaintiff, in the one note in the record from Dr. Ravindran, Plaintiff was found to have a positive straight leg raising test. This is contrary to the finding of the ALJ that "currently straight leg raising was negative bilaterally." (R. 18).

[6] Although the Court does not make an express finding of bias, it appears that in the absence of medical records, the ALJ focused on Plaintiff's lifestyle choices as a basis for his decisionmaking. *See* R. 19: "Interestingly, the claimant testified that she does not have prescription coverage, however, she is able to afford cigarettes and beer on a regular basis." Notwithstanding that the record contains conflicting reports of alcohol use (*see* R. 268 - where Plaintiff denies ever drinking alcohol), the fact that Plaintiff smokes a pack a day and (perhaps) drinks beer occasionally does not, as any addiction specialist could attest, warrant the implicit conclusion that she must not be in pain, for if she was, she would quit smoking and drinking and therefore be able to afford prescription coverage.

[7] Plaintiff had previously provided the Commissioner with the name, address and telephone number for this physician. (R. 197, 199).

[8] The ALJ relied heavily upon the consultative examination, which did not include a review of the objective MRI report, which showed a worsening of Plaintiff's condition since the comparison point.

**DONE** and **ORDERED** in Orlando, Florida on June 28, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record